**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **Case No. 1:18-cr-00068-WES** |
| **v.** | |
| **CHRISTOPHER KINNEY** | |

## UNITED STATES' SENTENCING MEMORANDUM

Defendant Christopher Kinney engaged in a pattern of sexual exploitation of multiple children over a period of years. He re-victimized children who suffered horrific sexual abuse by collecting and distributing pornographic images which memorialized their abuse. He also attempted to actively exploit a child through social media applications by encouraging who he thought was a real child to engage in prohibited sexual activity and travelled to physically meet the child and engage in sexual relations with that child. His conduct calls for a significant prison sentence.

The government recommends a sentence of 192 months imprisonment followed by a lifetime of supervised release with the conditions suggested by Probation, an order of $3,000.00 restitution, the mandatory $300 special assessments, and the mandatory $5,000 special assessment pursuant to 18 U.S.C. § 3013.

The Court is required to impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in Title 18, United States Code, Section 3553(a). Those purposes include in relevant part:

1

(1)     The nature and circumstances of the offense, and the history and characteristics of the defendant;

(2)     the need for the sentence imposed to:
  (A)     to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
  (B)     to afford adequate deterrence to criminal conduct;
  (C)     to protect the public from further crimes of the defendant; and
  (D)     to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

***

(4)     the kinds of sentence and the sentencing range established [in the federal sentencing guidelines].

***

(6)     The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar crimes.

(7)     the need to provide restitution to any victims of the offense.

See 18 U.S.C. §3553.

<u>NATURE OF THE OFFENSE AND</u>
<u>HISTORY AND CHARACTERISTICS OF THE DEFENDANT</u>

The facts of this case are graphically detailed in the prosecution version of the

Presentence Investigation Report but, because of their shocking nature, are worthy of

synopsis here:

On March 30, 2018, an individual reported to the Rhode Island State Police that a

co-worker, Christopher Kinney, began chatting with him on Facebook and, when he

viewed Kinney's Facebook page, found it to have many disturbing conversations about

young children along with images of topless juvenile females wearing diapers.

RISP Det. Houston reviewed Kinney's Facebook profile and the contents of

Kinney's Facebook page, verifying the complainant's claims, and thereafter initiated an

undercover investigation. Purporting to be a 14-year-old girl, Jane,[1] Houston made a

Facebook friend request to Kinney on April 16, 2018, which Kinney accepted on the

same day.  On that date, Kinney contacted Jane through Facebook messenger. During

his initial contact with Jane, Kinney asks:

> *Chris Kinney: Hello do you wear diaper or get spanked by your parent (April 16, 2018, at 12:19 PM)*

…and, over the next 10 days, the chat becomes progressively worse – and graphically

sexually explicit - from there.

In sum, Kinney asks Jane if she would be interested in wearing a diaper for him,

and asks her to measure her waist with a tape measure so he knows what sized diapers

he should get for her if they were to meet.  In short order, Kinney broaches the topic of

sexual activity, asking her if she's ever "done anything before with a guy or boy."

When Jane claims she is a virgin, Kinney states "Good," and that he liked that.

Eventually, he suggests to Jane that they meet at the Warwick Mall, where he would

change her into a diaper in the bathroom and then walk around the Mall with her until

she soiled herself.  He says he would then change her diaper and they could engage in

sexual activity there or somewhere else, saying he would like to put his penis in her

"hole" while she was sucking on a pacifier.   He repeatedly states that he is afraid of

being caught because of Jane's purported age, telling her that if anyone found out, he

---

[1] Not the pseudonym that Det. Houston actually used.  A substitute name is used herein to protect active investigations in which Det. Houston's actual pseudonym may still be employed.

would get in trouble and she would end up in "foster care."

Kinney arranges to meet Jane on April 26, 2018 at the Warwick Mall food court. On the agreed upon date and time, Kinney arrives at the Mall, being surveilled by law enforcement, and approaches the Food Court near the children's carousel where he is apprehended by law enforcement and taken outside the Mall.  During a subsequent search of his car, police find:

- Diaper bag containing several diapers large enough to fit a 14 year old girl
- Two Trojan condoms
- Pacifier and baby bottle
- Large zip-close bag of loose Skittles candy
- A canister of children's bubble fluid

In a lengthy post-arrest Mirandized statement, Kinney, among other things, admits believing he was chatting with a 14 year old girl, admits raising the topic of sexual activity with her, admits that he went to the Mall to meet the 14 year old girl to diaper her, and admits that the condoms found in his car were brought by him for use during his sexual activity with the girl.  Kinney admitted to bringing the baby bottle and pacifier for the 14-year-old girl and diapers that would fit her. He also admits that this was not "fantasy" for him – he fully intended on meeting a 14 year old girl at the Mall, diapering her, and engaging in sexual activity with her. Kinney defined a pedophile as "someone who touches children" and, when asked if he was a pedophile, responded, "Maybe, a little." Kinney stated he is sexually attracted to toddlers, and anyone prepubescent, acknowledging that he has a "problem" with this issue.

On April 26, 2018, Det. Houston examined the contents of Kinney's Apple

iPhone, seized at the time of his arrest.  The analysis revealed approximately fifty-six images of child pornography.  Additionally, Det. Houston identified numerous times where Kinney distributed images of child pornography to other people via the third-party chat application Kik messenger and through email. In his statement, Kinney admitted having CP on his iPhone, receiving child pornography through his ckinney2429@gmail.com email account, and to sending and receiving child pornography to and from others through Kik messenger, e-mail, and Facebook. Additional child-pornographic images were found on digital media later seized from Kinney's residence.

Suffice to say, the Defendant's conduct was incomprehensibly vile.  It takes a staggering amount of dehumanization to derive sexual gratification from the diapering and molestation of children.  Yet this defendant not only collected and distributed pre-existing child pornography of this sort, but he engaged "Jane" online and encouraged her to measure herself for diapers in anticipation of the perverse sexual encounter in which they would soon engage at the shopping mall. This behavior occurred not in some distant corner of the dark web, but on a social media application used by millions of children and teens - it is literally a parent's worst nightmare.   The pedophilic and fetishistic sexual proclivities that Kinney pursued and admitted to investigators shock the conscience.

The sentence imposed must reflect the seriousness of the offense.  18 U.S.C. 3553(a)(2)(A).  Child enticement is certainly one of the most serious charges that comes

before the District Court.  Very few federal offenses mandate a minimum term of ten or

more years imprisonment — evidence of Congress' intent that offenders like Kinney

lure children for their own sexual gratification should receive punishments among the

most severe imposed by federal courts.  "There can be no keener revelation of a

society's soul than the way in which it treats its children."  United States v.

Cunningham, 680 F.Supp.2d 844, 847 (N.D. Ohio, 2010).

Luckily, in this matter, no real child was involved, but the lack of victimization of

an actual child does little to depreciate the depravity of Defendant's intentions and the

steps he took to see his plan to fruition. Needless to say, if "Jane" were an actual child

and had Defendant's plan not been foiled by law enforcement, there would be one more

victimized child in this world today.

Moreover, in and of themselves, possession and distribution of child

pornography are serious offenses.  It is incumbent on sentencing Courts to recognize

that possession of child pornography is not a victimless crime.

> The Supreme Court has repeatedly explained, for thirty years, that individuals
> depicted in child pornography are harmed by the continuing dissemination and
> possession of such pornography containing their image. Such materials are a
> permanent record of the children's participation and the harm to the child is
> exacerbated by their circulation. Indeed, the Court has stated that as a permanent
> record of a child's abuse, the continued circulation itself would harm the child
> who had participated. Like a defamatory statement, each new publication of the
> speech would cause new injury to the child's reputation and emotional well-
> being. These statements were well supported by medical and social science.

United States v. Kearney, 672 F.3d 81, 94 (1st Cir. 2012)(internal citations and quotations

omitted).

The Victim Impact Statement submitted to the Court by the mother of Pia, of the "Sweet Sugar" series, reflects the distinct harm to sexual abuse survivors caused by circulation of images of their abuse.  Her harm is consistent with common trends.  In a recent survey led by the Canadian Centre for Child Protection, 67% of child sexual abuse material survivors said the distribution of their images impacts them differently than the hands-on abuse they suffered because the distribution never ends and the images are permanent.  *Survivor's Survey, Executive Summary 2017*, Canadian Centre for Child Protection.[2]

Kinney's personal history and characteristics also demonstrate the need for a very significant sentence. His criminal conduct qualifies him as repeat and dangerous sex offender against minors.  Sexual attraction to minors and a willingness to act on his predatory desires are his characteristics. On the date of his arrest, Defendant basically told agents that he is a pedophile which, perhaps, may be attributable, in part, to the abuse he allegedly suffered as a child.  The sentence imposed should address his behavioral needs.  There are sex offender treatment programs available in the Bureau of Prisons, including at FMC-Devens, which may assist the defendant.  In addition, his post-incarceration conditions of supervised release should include mental health treatment, but a lengthy period of supervised release to ensure that he is monitored for

---

[2]*See* https://protectchildren.ca/pdfs/C3P_SurvivorsSurveyExecutiveSummary2017_en.pdf

life and children are protected from him.

### THE NEED TO PROVIDE JUST PUNISHMENT, PROMOTE DETERRENCE, AND PROTECT THE PUBLIC FROM FUTHER CRIMES OF THE DEFENDANT

Kinney may properly be described as a sexual predator, his conduct was beyond abhorrent, and he needs to be punished severely.  More importantly, the public must be protected from him – every day he spends in prison is a day he cannot hurt a child.  Child sex offenders have high rates of recidivism.  See *Sex Offender Management Assessment and Planning Initiative Research Brief*, July 2015[3]. "Sex offenders had lower overall rearrest rate than non-sex offenders, but their sex-crime rearrest rate was four times higher than the rate for non sex offenders." Id. at 2.  "One interpretation is that first time recidivism may occur for some child molesters 20 or more years after criminal justice intervention, and that recidivism estimates based on shorter followup periods are likely to underestimate the lifetime risk of child molester reoffending. " Id. at 3.

Further, Congress, the Supreme Court, and the Sentencing Commission have all expressed the view that deterrence is an important factor when fashioning an appropriate sentence in child pornography cases.  "The most expeditious if not the only practical method of law enforcement may be to dry up the market for [child pornography] by imposing severe criminal penalties on persons selling, advertising, or

---

[3] Available at https://www.smart.gov/pdfs/RecidivismofAdultSexualOffenders.pdf.

otherwise promoting the product." United States v. Irey, 612 F.3d 1160, 1206 (11th Cir. 2010), (citing United States v. Ferber, 458 U.S. 747, 760 (1982). "It is also surely reasonable for the State to conclude that it will decrease the production of child pornography if it penalizes those who possess and view the product, thereby decreasing demand." Osbourne v. Ohio, 495 U.S. 102, 109-10 (1990). See also (United States v. Goff, 501 F.3d 250, 261 (3rd Cir. 2007)("Deterring the production of child pornography and protecting the children who are victimized by it are factors that should have been given significant weight at sentencing"); United States v. Barevich, 445 F.3d 956, 959 (7th Cir. 2006) ("Transporting and receiving child pornography increases market demand. The greater concern under the Guidelines is for the welfare of these exploited children. The avenue Congress has chosen to weaken the child pornography industry is to punish those who traffic in it.").

In United States v. Goldberg, 491 F.3d 668, 672 (7th Cir. 2007), the court pointed out:

> Young children were raped in order to enable the production of the pornography that the defendant both downloaded and uploaded - both consumed himself and disseminated to others. The greater the customer demand for child pornography, the more that will be produced. Sentences influence behavior, or so at least Congress thought when in 18 U.S.C. § 3553(a) it made deterrence a statutory sentencing factor. The logic of deterrence suggests that the lighter the punishment for downloading and uploading child pornography, the greater the customer demand for it and so more will be produced.

The First Circuit has recently upheld the substantive reasonableness of lengthy prison sentences in child pornography cases. See e.g., United States v. King, 741 F.3d 305 (1st Cir. 2014)(72 month sentence for possession of child pornography substantively

reasonable); United States v. Stone, 575 F.3d 83 (1st Cir. 2009)(17.5 year sentence for distribution of child pornography substantively reasonable).

## RESTITUITON

Restitution is mandatory in this case, pursuant to 18 U.S.C. §2259, "regardless of the either the defendant's ability to pay or the victim's receipt of compensation from some other source." United States v. Chiaradio, 684 F.3d 265, 284 (1st Cir. 2012); see also United States v. Kearney, 672 F.3d 81, (1st Cir. 2012).  To the government's knowledge, only one identified victim, "Pia" through her mother, has submitted a victim impact statement and, to date, it is unknown whether she has submitted a restitution request.

The government recommends that, pursuant to those requests, restitution in the amount of $3,000 be ordered to Pia.  This amount is consistent with the Supreme Court's directive in Paroline v. United States, 134 S.Ct. 1710, (2014) that restitution be ordered in an amount that an amount that is "not severe" yet also "not a token or nominal account." Id. at 134 S.Ct. 1727, and the $3,000 figure is the amount Congress determined would be the least amount appropriate under the Amy, Vicky and Andy Child Pornography Restitution Act of 2018.

Pia's Victim Impact Statement is heartbreaking and shows the damage inflicted on victims by the crimes committed by Defendant.  It demonstrates resiliency in the face of life long damage, and requests justice.  A significant sentence and restitution is a small step towards that goal.

Respectfully submitted,

AARON L. WEISMAN
United States Attorney

/s/ Ronald R. Gendron
RONALD R. GENDRON
Assistant U.S. Attorney
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
ronald.gendron@usdoj.gov
Tel: 401-709-5036
Fax: 401-709-5001

## CERTIFICATE OF SERVICE

I, hereby certify that on this 12th day of December, 2019, I caused the within United States' Sentencing Memo to be electronically filed with the United States District Court for the District of Rhode Island, using the CM/ECF System.

/s/ Ronald R. Gendron
RONALD R. GENDRON
Assistant U.S. Attorney